**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
2006 AUG 18  PM 5: 03

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, §§§ Plaintiff, §§ and §§ DOROTHEA HUSCHKA AND ERIC MADIGAN, §§§ Plaintiff-Intervenors, §§§ v. §§§ SPHERION CORPORATION, §§§ Defendant. §§ | Civil Action No. A-04-CA-632-LY |

## CONSENT DECREE

The parties to this Consent Decree are the Plaintiff, United States Equal Employment

Opportunity Commission ("EEOC"), Plaintiff-Intervenors, Dorothea Huschka and Eric Madigan

("Intervenors"), and Defendant, Spherion Corporation ("Spherion").  This Consent Decree

resolves the allegations raised by the EEOC and Plaintiff-Intervenors in the above-referenced

Civil Action No. A-04-CA-632-LY.  This Consent Decree shall apply only to Spherion's

location at 900 East Braker Lane in Austin, Texas ("the Braker Lane facility").

The EEOC initiated this lawsuit under the Americans with Disabilities Act, to correct

alleged unlawful employment practices on the basis of disability, and to provide appropriate

relief to Dorothea Huschka and Eric Madigan, who were allegedly adversely affected by such

practices.  Dorothea Huschka and Eric Madigan intervened in the lawsuit.  The EEOC and

Intervenors alleged that Spherion Corporation discriminated against Ms. Huschka, Mr. Madigan,

and a class of similarly situated individuals in violation of the Americans with Disabilities Act

by (1) failing to provide a reasonable accommodation during the application process, (2) failing to hire Ms. Huschka and Mr. Madigan based on the need to provide a reasonable accommodation, and (3) failing to hire Ms. Huschka and Mr. Madigan because of their disability, deafness.

Spherion expressly denies the validity of any claim and/or cause of action asserted in Plaintiff EEOC's Complaint and Plaintiff-Intervenors' Complaint-in-Intervention, and Spherion enters into this Consent Decree for the sole purpose of avoiding the expenses associated with this litigation. Spherion further asserts that by entering into this Consent Decree it makes no admission of liability or wrongdoing and makes no admission that its alleged conduct was improper, discriminatory or illegal in any respect. It is also understood that this Consent Decree does not constitute an adjudication or finding on the merits and cannot be used as evidence of liability, res judicata, or collateral estoppel in any other proceeding against Spherion, except for the enforcement of this Consent Decree.

IT IS ORDERED, ADJUDGED AND DECREED as follows:

1.     This Court has jurisdiction of the subject matter of this action and the parties, venue is proper, and all administrative prerequisites to the EEOC's filing of this action have been met. The parties stipulate to the Court's jurisdiction.

2.     This Consent Decree resolves all issues raised in the EEOC's Complaint and the Complaint-in-Intervention. The EEOC and Intervenors waive further litigation of all issues raised in the above-referenced complaints. The EEOC expressly reserves its right, however, to process and litigate any other charges which may now be pending or may in the future be filed against Spherion.

3.     The EEOC agrees not to sue Spherion and/or any and all of its divisions, subsidiaries and affiliates with respect to the specific factual allegations contained in the administrative charges filed by Eric Madigan (Charge No. 36A-A3-00374) and Dorothea Huschka (Charge No. 36A-A3-00373) that provided the basis for this litigation ("the Charges"). The EEOC also agrees not to use the Charges as the jurisdictional basis for filing any other lawsuit against Spherion, and not to initiate a Commissioner's charge of discrimination based upon the Charges. The EEOC agrees to conclude its investigation of the Charges.

4.     The duration of this Consent Decree shall be two (2) years from the date of its entry with this Court. This Court shall retain jurisdiction of this action during the period of this Decree and may enter such other and further relief as it deems appropriate to ensure implementation and enforcement of its provisions. In the event that any party to this Consent Decree believes that another party has failed to comply with a provision of this Consent Decree, the parties shall first attempt to resolve their differences by good faith negotiations. To that end, either party shall notify the other party in writing via e-mail and first class mail of the particulars of the dispute, the term or terms of the Consent Decree that are involved, and a suggested resolution of the problem. The recipient of the written communication must respond, in writing, to the proposed solution within ten (10) business days. If the dispute has not been resolved within thirty (30) days of the date that notice of the dispute was provided, the party that believes that the Consent Decree has been violated may move the Court to enforce the Consent Decree.

Any court-determined violation of the Consent Decree by Spherion, its agents or assigns shall toll the running of this two-year period as of the date of the violation.

5.     During the term of this Consent Decree, Spherion, its officers, agents, successors and other persons in active concert or participation with it, or any of them, are enjoined from

*Consent Decree*

engaging in any employment practice which discriminates on the basis of disability.

6.      Within thirty (30) days of the entry of this Consent Decree by the trial court and approval by the bankruptcy court, Spherion, in settlement of this dispute, shall pay the sum total of $78,300.00 (SEVENTY-EIGHT THOUSAND THREE HUNDRED DOLLARS), less all legally required deductions and/or withholdings, to be divided as follows:

      a.      $54,810.00 to Eric Madigan and Advocacy, Inc.. Payment shall be mailed directly to Mr. Madigan's counsel, Lucy Wood, Advocacy, Incorporated, 7800 Shoal Creek Blvd., Suite 142-S, Austin, Texas 78757;

      b.      $23,490.00 to the bankruptcy estate of Dorothea Huschka, divided as ordered by the Bankruptcy Court.  Payment shall be made to the Bankruptcy Trustee Marsha Milligan.

7.      A copy of the settlement checks, and any accompanying transmittal documents shall be forwarded to Robert B. Harwin, Associate Regional Attorney, San Antonio Field Office, United States Equal Employment Opportunity Commission, 5410 Fredericksburg Road, Suite 200, San Antonio, Texas 78229.

8.      Spherion's present reasonable accommodation policy ("Reasonable Accommodation Policy"), attached hereto as Exhibit A, shall remain in effect for the duration of this Consent Decree.  Spherion shall post and keep posted for the duration of this Consent Decree, in a conspicuous place at its facility at 900 East Braker Lane in Austin, Texas, where notices to employees and applicants for employment are customarily kept or posted, a copy of the Reasonable Accommodation Policy, as modified below in Paragraph 9.  Spherion shall provide each employee at the Braker Lane facility, including all newly hired employees, a copy of the Reasonable Accommodation Policy, as modified below in Paragraph 9.  Within thirty (30)

*Consent Decree*

days of the execution of this Decree, Spherion shall forward to the EEOC a letter indicating that the Reasonable Accommodation Policy, as modified below in Paragraph 9, has been posted and distributed.

9.      In addition to maintaining and enforcing the reasonable accommodation policy referenced in Paragraph Eight (8), Spherion will modify its Reasonable Accommodation policy, page 17, number 2, to state as follows:

"Applicants with Hearing Impairments"

- "Inquire whether the applicant prefers an interpreter in the application process, and provide an interpreter if requested by the applicant.  If an interpreter is requested, you shall make all reasonable efforts to provide an interpreter to assist in the application process as soon as possible."

- "If the applicant does not request an interpreter, you may put all interview questions, oral tests and instructions in writing and allow the applicant to write answers.  Provide extra time to complete tests (unless the test measures speed)."

- "Spherion will offer interpreters to deaf applicants in training without awaiting a formal request or requiring the applicants who are deaf to wait any longer than hearing applicants to be processed and trained."

10.     During the term of this Consent Decree, Spherion shall conduct annual training for all its managers and employees involved in the recruitment and/or training process at the Braker Lane facility on the subject of compliance with federal laws prohibiting employment discrimination, including specifically ADA provisions prohibiting discrimination based on disability and requiring reasonable accommodation.  Training will include: (a) discussion of

*Consent Decree*

Spherion's Reasonable Accommodation Policy and its legal obligations under the Americans with Disabilities Act; (b) procedures for responding to requests for reasonable accommodation, including the obligation to engage in an interactive process in order to determine what constitutes a reasonable accommodation, including, but not limited to, Spherion's obligations to accommodate individuals who are deaf or have a hearing impairment; (c) procedures for registering complaints of discrimination; (d) procedures for responding to complaints of discrimination; and (e) the penalties for engaging in prohibited discrimination.

11.     During each year of the Decree, Spherion will provide no less than four (4) hours of training to all of Spherion's managers and employees involved in the recruitment and/or training process at the Braker Lane facility on the subjects listed in Paragraph Ten (10) above. Spherion agrees that the training will be conducted by Edwin Sullivan of SEYFARTH SHAW or any other attorney with at least three years of experience in labor and employment law. The EEOC shall have the right to approve of any training. The first training session will take place within ninety (90) days after the entry of this Consent Decree. The subsequent training session will take place on or about the first anniversary of the entry of this Consent Decree. All management and employees involved in the recruitment and/or training process at the Braker Lane facility shall both register and attend the training sessions. Any newly-hired or newly-promoted personnel who are assigned or hired after the live training session, or personnel who are otherwise unable to attend the live training session, will undergo the training via a videotape that will contain the same content and subject matter as the live training session. The registry of attendance shall be submitted to the EEOC and retained by Spherion for the duration of this Decree.

12.     Spherion shall distribute a printed form to all deaf applicants who are known by Spherion to be deaf and who visit Spherion's Braker Lane facility requesting information regarding their preferred method of communication and providing a means for them to request the services of a sign language interpreter in the application and training process.  A sample form is attached hereto as Exhibit B.

13.     Within ten (10) business days of the entry of this Consent Decree, Spherion shall post in a conspicuous place in its Braker Lane facility where notices to employees and applicants for employment are customarily kept or posted, the Notice attached hereto as Exhibit C to this Consent Decree.  The Notice shall remain posted for the duration of this Decree.  If the Notice becomes defaced or illegible, Spherion will replace it with a clean copy.  Spherion shall certify to the EEOC, in writing, within fifteen (15) days of entry of this Decree that the Notice has been properly posted.  Spherion shall permit a representative of EEOC to enter Spherion's premises for purposes of verifying compliance with this paragraph at any time during normal business hours.

14.     Spherion shall provide postings for job opportunities in ways accessible to the deaf and hard of hearing.   Specifically, Spherion will provide postings for job opportunities to the office of the Travis County Services for the Deaf and Hard of Hearing, the Austin Deaf Club, and the Texas School for the Deaf.  These materials will be provided to the person in charge of postings in each location, for placement in a location selected by that individual.  Advocacy, Inc. shall furnish to Spherion the names and contact information for each such person within two weeks of the entry of this Decree.

The materials will be provided for posting during the term of this Decree and the person in charge of such postings in each location will be asked to maintain the posting throughout the

term of the Decree.  Spherion will send to Advocacy, Inc. an e-mail version of these materials for Advocacy, Inc.'s review and re-posting through the "deaf network" and other online services for the deaf and hard of hearing.

Nothing in this paragraph shall be construed as requiring Spherion to change any of the job requirements or eligibility requirements for positions.  Spherion shall at all times retain managerial discretion to select, hire, assign, transfer, train, promote, compensate, discipline or terminate any applicants or employees in accordance with applicable law.

15.    The terms of this Consent Decree shall be binding upon the EEOC, Intervenors, and Spherion, their respective agents, officers, employees, servants, successors, and assigns, as to the issues resolved herein.

16.    When this Consent Decree requires the submission by Spherion of documents or other materials to EEOC, such documents or other materials shall be mailed to Robert B. Harwin, Associate Regional Attorney, 5410 Fredericksburg Road, Suite 200, San Antonio, Texas 78229.  All notices required or provided pursuant to this Consent Decree will be sent to Spherion, care of Gerald Maatman, 131 S. Dearborn Street, Suite 2400, Chicago, Illinois 60603.

17.    The parties to this Consent Decree shall bear all their own costs and attorney's fees incurred in this action as of the date of this Consent Decree including, but not limited to, the cost of interpreters.  Furthermore, the parties agree that there is no "prevailing party" in this action or proceeding.

**SO ORDERED** ~~████████~~ this *18th* day of *August*_____, 2006.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

*Consent Decree*

Respectfully submitted,

RONALD S. COOPER
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____
ROBERT A. CANINO
Regional Attorney
Oklahoma Bar No. 011782

_____
ROBERT B. HARWIN
Associate Regional Attorney
District of Columbia Bar No. 076083

_____
JUDITH G. TAYLOR
Supervisory Trial Attorney
Texas Bar No. 19708300

*Kate Birenbaum*

_____
GERALD MAATMAN, *admitted*
*Pro hac vice*
EDWIN SULLIVAN
Texas State Bar No. 24003024
KATE BIRENBAUM
Texas State Bar No. 00787087

SEYFARTH SHAW, LLP
700 Louisiana, Suite 3700
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

ATTORNEY FOR DEFENDANT

_____
JENNIFER RANDALL
Trial Attorney
Colorado State Bar No. 033240

EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229-3555
Telephone: (210) 281-7636
Facsimile: (210) 281-7669

*Consent Decree*

Respectfully submitted,

RONALD S. COOPER
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ROBERT A. CANINO
Regional Attorney
Oklahoma Bar No. 011782

ROBERT B. HARWIN
Associate Regional Attorney
District of Columbia Bar No. 076083

JUDITH G. TAYLOR
Supervisory Trial Attorney
Texas Bar No. 19708300

JENNIFER RANDALL
Trial Attorney
Colorado State Bar No. 033240

GERALD MAATMAN, *admitted*
*Pro hac vice*
EDWIN SULLIVAN
Texas State Bar No. 24003024
KATE BIRENBAUM
Texas State Bar No. 00787087

SEYFARTH SHAW, LLP
700 Louisiana, Suite 3700
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340

ATTORNEY FOR DEFENDANT

EQUAL EMPLOYMENT OPPORTUNITY
   COMMISSION
San Antonio Field Office
5410 Fredericksburg Road,  Suite 200
San Antonio, Texas  78229-3555
Telephone: (210) 281-7636
Facsimile:  (210) 281-7669

ATTORNEYS FOR PLAINTIFF

LUCY D. WOOD
Texas State Bar No. 24013780

ADVOCACY, INCORPORATED
7800 Shoal Creek Blvd., Suite 142-S
Austin, Texas 78757
Telephone: (512) 454-4816
Facsimile:  (512) 302-4936

ATTORNEY FOR PLAINTIFF-INTERVENORS

*Consent Decree*

# EXHIBIT A

**The Americans With Disabilities Act (ADA)**

The Americans with Disabilities Act (ADA) is easily the most complex federal law prohibiting employment discrimination.   For this reason, we have devoted a large portion of this *Deskbook* to address ADA issues.   Every member of an office staff who is involved with recruiting and testing applicants and filling job orders must review these materials and become familiar with the requirements imposed by the ADA.   When further assistance or clarification is required, contact The Shared Services Contact Center (1-866-HELP-456, option 2) or the Employment Law Department.

*Offices in California* should take particular care in reviewing this section.  The California state law prohibiting disability discrimination is similar in some ways to the ADA, but often imposes more stringent and onerous obligations on employers.  For example, for certain conditions,

the California law defines individuals with those conditions as disabled regardless of the severity. In addition, California law **requires** that employers engage in an interactive process with individuals who are disabled or are believed to be disabled. This interactive process would be used to determine whether there is a reasonable accommodation that would enable the employee to perform essential job functions, even if the employee does not suggest a specific reasonable accommodation. While it may be a good idea under the ADA and some state laws to engage in such an interactive process, other laws do not specifically require this. In California, the legislature has created a cause of action for failure to engage in an interactive process.

## Definition of Disability

Under the ADA, a "disability" is defined as a physical or mental impairment that substantially limits a major life activity. While the term "major life activity" is not defined in the ADA, the EEOC has interpreted it to include such things as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. The term "disability" also includes having a history of such an impairment and being regarded as having such an impairment.

Whether a physical or mental impairment constitutes a "disability" under the ADA must be made on a case-by-case basis and depends only on how the impairment affects the individual claiming to be "disabled." Nevertheless, as a good rule of thumb, there are certain physical and mental conditions, listed below, that will usually cause an individual to be considered "disabled." There are other conditions, also listed below, that may cause an individual to be considered "disabled," depending on the severity of the condition.

Because the determination of whether an individual is "disabled" for purposes of the ADA is a legal conclusion that will greatly impact the individual's rights, if you have any questions, you should contact The Shared Services Contact Center (1-866-HELP-456, option 2) or the Employment Law Department for further guidance.

⊕ The following conditions usually render a person disabled regardless of how severe the impairment is:

**(You should always consider making accommodations for these disabilities.)**

| | |
|---|---|
| AIDS & HIV – positive condition | Learning disabilities/dyslexia |
| Cancer not in remission | Limb impairments (unless slight) |
| Cerebral Palsy | Mobility impairments (unless slight) |
| Diabetes (whether controlled by medication or not) | Multiple Sclerosis |
| Epilepsy/Seizures | Pregnancy-related complications |
| Hearing impairment (unless slight) | Speech impairments (unless slight) |
| Heart disease | Tuberculosis |
| Hepatitis | Vision disorders (unless slight) |

⊕ The following conditions may render a person disabled depending on the severity of the condition:

| Acrophobia | Carpal Tunnel Syndrome |
|---|---|
| Allergies/Chemical insensitivities | Diabetes |
| Arthritis | Hypertension |
| Asthma | Skin disorders |
| Back injuries | |

If an employee informs you he is "disabled" because he has a particular condition, you may ask the employee for medical information to determine whether the employee is disabled. (See later section for guidance on medical inquiries.)

⊕ Clinically-diagnosed mental conditions, such as the following, may be considered disabilities, depending on their severity and their effect on the individual claiming to be "disabled":

| Manic depression | Post-traumatic stress disorder |
|---|---|
| Bipolar affective disorder | Schizophrenia |
| Anxiety disorders | |

Stress and depression are normally not "disabilities" since they are situational and usually temporary. However, if an employee requests a leave of absence or other accommodation for stress or depression, you should always request medical information to determine if the person is disabled and whether an ADA accommodation is appropriate.

## IMPORTANT

**Because the term "disability" includes being "regarded as" having a physical or mental impairment that substantially limits a major life activity, a person who has a history of a disability (e.g., past coronary trouble, previous back injury, cancer that has been cured or is in remission) will be considered "disabled" if you totally deny her employment or a large class of jobs because of her medical history.**

## Impact of ADA on the Application Process

Spherion must analyze all recruiting methods to make sure that individuals with disabilities are included in the recruiting process. It must make office facilities accessible to individuals with disabilities and provide reasonable accommodation to individuals with disabilities during the application, interviewing and testing process. The ADA also prohibits Spherion from asking interviewing questions relating to an individual's disabilities.

## Recruiting

All Spherion advertisements should state the following: "EOE/Disabled welcome." All written recruiting materials, such as flyers, and job postings should include the language "*EOE/Disabled welcome.*"

If you post job openings or other recruitment material at off-site locations, such as the Employment Security Commission, you should ask the agency to post the materials at a location, which is

physically accessible to individuals with disabilities and in a position, which can be viewed by individuals confined to wheelchairs.  Similarly, if you are conducting off-site recruiting, you should request assurances of recruiting facilities that their premises are accessible to disabled individuals.

## Accessibility of Interviewing Site

If your building or office space is inaccessible, you must consider alternative ways of allowing individuals in a wheelchair to participate in the application process.  For instance, you may arrange to meet the applicant at a local school, public library, or local organization that provides services for the disabled. You will obviously need to take the employment application, and all otherm aterials necessary to allow the applicant to apply and take necessary assessments.

You should never deny a disabled individual the opportunity to participate in the hiring process due to inaccessibility of your office space, or for any other reason, without first contacting The Shared Services Contact Center (1-866-HELP-456, option 2).

## Accommodating Applicants with Known Disabilities

In order to meet this accommodation requirement, all offices must do the following minimum steps:

1.  Post the Accommodation Notice given in this resource in all areas used by applicants, such as areas used for interviewing, testing and orientation.

2.  When an applicant with an obvious disability (e.g., individuals with vision impairment, hearing impairment, or confined to a wheelchair) comes into your office to apply, do the following:

    ⊕  Advise the applicant that our application process includes completion of an employment application, an interview, and taking certain assessments. Explain that assessments include a typing test, pencil and paper test, assessments contained on a computer, and manual dexterity tests and ask if the applicant will need an accommodation during this process due to his or her disability.

    ⊕  Discuss any accommodations or assistance the applicant may need during the application, testing and interviewing process.

3.  You should also follow the above procedures where an applicant contacts you over the telephone and advises you of a disability.

4.  If an applicant requests an accommodation and the need for an accommodation is not apparent, you may request written verification from the applicant's physician, counselor or therapist of the applicant's functional limitations and the need for an accommodation. You should say "Since your need for an accommodation is not apparent, it is our policy to request verification of your need for an accommodation from your physician or physical therapist."

5.  **At this stage, do not get into discussions about the types of accommodations needed to perform a certain job(s).  Focus solely on accommodations needed for interviewing and testing.**

6.  A discussion of factors to consider in making accommodation decisions and suggested accommodations for applicants is given in another portion of this guide.

# Accommodation Notice

## To All Applicants For Employment with
## SPHERION CORPORATION:

If you need assistance or accommodation during any part of the application, interviewing, or testing process, due to a disability, please notify a **SPHERION** representative in this office. **SPHERION** will make reasonable accommodations to assist you in our application, interviewing and testing process.  Thank you.

### SPHERION CORPORATION

## Pre-Employment Inquiries

The ADA specifically prohibits any questions in the interviewing process, or on employment applications, regarding an applicant's apparent or hidden disabilities.

Interviewing DON'TS

☠ Have you ever been treated for any of the following conditions or diseases? (Followed by a checklist of various conditions and diseases.)

☠ Please list any conditions or diseases for which you have been treated in the past three years.

☠ Have you ever been hospitalized? If so, for what condition?

☠ Have you ever been treated by a psychiatrist or psychologist? If so, for what condition?

☠ Have you ever been treated for any mental condition?

☠ Is there any health-related reason you may not be able to perform the job for which you are applying?

☠ Have you had a major illness in the last five years?

☠ How many days were you absent from work because of illness last year?

☠ Do you have any physical defects that preclude you from performing certain kinds of work? If yes, describe such defects and specific work limitations.

☠ Do you have any disabilities or impairments that may affect your performance in the position for which you are applying?

☠ Are you taking any prescribed drugs?

☠ Have you ever been treated for drug addition or alcoholism?

☠ Have you ever filed for workers' compensation insurance?

You may **not** ask questions during reference and background checks regarding:

☠ disability

☠ illness

☠ workers' compensation history

☠ whether a poor attendance record was due to illness, accident or disability

## Interviewing An Applicant With A Known Disability

If you are interviewing an applicant with a known disability (one which is apparent or identified to you by the applicant), you should keep in mind the following:

⊕ Ask the same interviewing questions of disabled applicants that you ask of all applicants, regardless of disability.

⊕ If you have a particular assignment in mind for a disabled applicant, and his disability would appear to interfere with job-related functions of the types of assignments for which he will be considered, you may ask the applicant to describe or demonstrate how he would perform those functions, even if you do not ask other applicants to provide similar description or demonstration

**Example**: If an applicant has one arm and you have an assignment that involves placing bulky items on shelves up to six feet high, you may ask the applicant to describe how he would perform this task. If you ask the applicant to demonstrate how he can perform the

function, you will have to provide any <u>reasonable</u> accommodation necessary for him to conduct the demonstration.

- ⊕ You may ask the applicant to demonstrate or explain how the job would be performed <u>only when</u> the applicant's disability <u>appears to interfere with performing job-related functions</u> of the assignments for which she is being considered.

**Example:** If an applicant with one leg is qualified to perform an assignment that involves sorting small parts while seated, you cannot ask her to demonstrate the ability to do this job, unless all applicants under consideration for the assignment are required to do so.

Never ask an applicant with a known or apparent disability about:

- ✂ the nature of the disability
- ✂ the severity of the disability
- ✂ the condition causing the disability
- ✂ any prognosis or expectation regarding the condition
- ✂ whether the individual will need special leave or treatment because of the disability

## Impact of ADA on Hiring and Assignment Decisions

The ADA allows job-related hiring standards, such as education, skills and work experience. You do not have to make exceptions for disabled applicants who do not meet these standards. However, there are many impermissible reasons for refusing to hire disabled applicants. Spherion also must take affirmative steps to eliminate barriers that prevent disabled employees from performing the essential functions of job assignments.

## Hiring Criteria

If a hiring criterion screens out a disabled individual <u>due to his disability</u>, the employer must prove that the standard relates to an "essential function" of the job.

**Example:** If you require that employees have a car for certain assignments, you must make an exception for a disabled employee who cannot drive because of his disability (e.g., a blind employee); being able to drive to work is not an essential function of any job that does not involve driving abilities.

**Example:** If you require applicants to complete the application and assessments without assistance, you must make an exception for visually impaired persons. Similarly, you cannot hold learning-disabled applicants to time limitations of assessments where the ability to perform certain tasks within the time frame is not a critical element of the position. On the other hand, if an assessment does in fact measure an essential function of a particular job (e.g., typing speed), you may hold disabled applicants to this standard.

## Medical Inquiries

Due to ADA restrictions on medical examinations and inquiries, Spherion's policy is to prohibit the use of all medical examinations, either pre-employment or pre-assignment, for employees unless the office has obtained prior guidance from the Employment Law Department.

**Former Norrell offices should discontinue the use of the Illness and Injury History Questionnaire previously used for workers' compensation purposes.**

## Unlawful Reasons for Refusing to Hire Applicants

- The existence of a disability, if the individual is otherwise qualified.
- The individual's inability to perform non-essential job functions.
- Concerns about future workers' compensation claims.
- Speculative concerns about future absenteeism or leave of absence
- The requirement or cost of a reasonable accommodation, unless a particular accommodation is an undue hardship.
- Concerns about client reaction to a disabled applicant or reasonable accommodation.
- The inability to take or pass an assessment that does not measure essential functions of any assignment or job at your office branch or site.

## Determining Essential Functions of Job Assignments

The ADA requires employers to focus on the "essential functions" of a specific job to determine whether a disabled person is qualified for the job. You cannot deny a disabled individual a job because he or she cannot perform functions that are only marginal to the job. Thus, when considering disabled individuals for an assignment, you need to identify the essential functions of the particular assignment. Familiarity with the jobs Spherion employees perform for our clients will make this easier.

**When a disabled individual cannot perform the essential functions of a job because of a disability, you must try to find a reasonable accommodation that would enable the performance of these functions. If the person cannot perform the essential functions even with accommodations, the person is not qualified for the job and you are not required to place the individual in the job.**

1. After you have made a decision to hire a disabled applicant, you should explore with the employee the types of assignments for which she will be considered and the types of accommodations she will need to perform these assignments.

2. You may document the type of accommodations the employee will need. For example, for an individual in a wheelchair, you should note "accessibility for wheelchair required." For a hearing-impaired employee, you might note "needs instructions in writing".

3. If a disabled applicant performs poorly on one of Spherion's assessments due to disability, you must analyze whether the test measures the "essential functions" of the job. If the assessment does not reflect required skills of a particular job, you should not rely on that score in a placement decision or with respect to that job.

4. You should place an individual if he or she can perform the essential functions of the job with "reasonable accommodation," and are as qualified as other candidates to perform the essential functions of the job, with reasonable accommodation.

## Making Accommodation Decisions

Accommodation decisions must be made on a case-by-case basis in light of the person's individual needs, the accommodations available, and the cost of the accommodation.

Factors to consider:

- You do not have to provide an accommodation unless the applicant or employee requests one, or the applicant or employee has an apparent disability, which would interfere with the ability to participate in the hiring process or to perform the essential functions of the job.

- You should always consult the disabled applicant or employee as the first step in considering an accommodation. The disabled individual may be able to suggest a simple change or adjustment based upon previous life or work experience.

- You do not have to accept or provide the specific type of accommodation requested by a disabled applicant or employee. You may explore other accommodations that are less costly or less difficult. However, you should give the individual's request due consideration.

- When an applicant's or employee's need for an accommodation is not obvious, you may request written verification (from the individual's physician, counselor, or therapist) of the functional limitations and the need for an accommodation.

- If the accommodation is not easy to identify, you should contact an agency or organization in your area that provides services for the disabled, preferably one that deals with the type of disability involved.

- In deciding whether an accommodation would cause significant difficulty or expense, you should contact The Shared Services Contact Center (1-866-HELP-456, option 2).

## Suggested Accommodations for Applicants

1. Applicants With Visual Impairments

   - Read the application and any other written materials and assist with writing responses. Alternatively, put all written information used during the application process on audiotape.

   - Administer written tests orally (unless the test measures the ability to read).

   - Provide extra light.

   - Provide extra time to complete tests (unless the test measures speed).

   - Larger screens or magnifiers

2. Applicants With Hearing Impairments

   - Put all interview questions, oral tests and instructions in writing and allow applicant to write answers. Alternatively, hire an interpreter to assist during the hiring process. (We are required to pay for the interpreter).

   - Provide extra time to complete tests (unless the test measures speed).

   - TDD/TDY or other machines that allow communication with the hearing impaired.

3. Applicants in Wheelchairs

   - Provide a lowered table, a lap top surface or other equipment to make written paperwork and assessments accessible.

4. Applicants with Dyslexia or Other Learning Disabilities

   - Allow opportunity to take written portions of assessments orally (unless the assessment measures the ability to read).

⊕   Provide extra time to complete paperwork and tests (unless the test measures speed).

## Examples of Reasonable Accommodation on the Job

Below is a list of reasonable accommodations that may be required under the ADA. Some of the accommodations, such as job restructuring and modified work schedules, will require client involvement and cooperation. The ADA indicates that our clients have some responsibility under the ADA to make accommodations for our employees, as long as the accommodation is not an undue hardship.

⊕   Making facilities accessible. As most Spherion clients are subject to the ADA, our clients should have already removed physical barriers that impede accessibility.

⊕   Job restructuring. This involves reallocating or redistributing marginal functions of a job. You do not have to reallocate essential functions. However, you may have to modify when or how essential functions are done. You cannot reduce a disabled person's pay simply because you had to reassign marginal functions.

⊕   Modified work schedules or attendance policies. This may be necessary to accommodate employees who need to receive physical therapy or special medical treatment (e.g. cancer patients, kidney dialysis) or require rest periods (e.g. people with cancer, diabetes or respiratory conditions) or who, because of mobility impairments, depend on public transportation with special para-transit schedules.

⊕   Reassignment. If an employee is unable to perform the essential functions of a position, assignment to another position with the same or different client should be considered. You do not have to reassign to a position that would be a promotion nor do you have to "bump" other employees or create a new job.

⊕   Providing trainers for mentally deficient employees; providing interpreters for hearing impaired employees for initial on-the-job orientation or training; providing verbal instructions to visually impaired employees regarding initial on-the-job orientation or training.

⊕   Acquisition or modification of equipment and devices. Examples may be available from an agency or organization in your area, which provides services for the disabled, preferably one that deals with the type of disability involved.

## Analyzing Safety Risks

The ADA does not allow you to exclude a disabled person from an assignment simply because *you think* the person cannot safely perform the job or would pose a risk of harm to himself or others. You may exclude a disabled person from a specific job only if you have objective medical evidence that this particular person would pose a **"direct threat"** to the health and safety of himself or others. This standard is very hard to prove and situations must be evaluated on a case-by-case basis. The following are the factors you need to consider.

⊕   There must be a **significant risk of substantial harm.** Significant means a **high probability** of harm, not merely speculative. The assessment must be made with respect to the individual and not based on the general type of disability involved.

**Example:** you cannot assume that a person with epilepsy or heart disease cannot work in a light industrial setting operating machinery or doing heavy lifting. You must examine the abilities and limitations of that particular person with medical information provided by the employee and her doctor.

⊕ The risk must be specific in relation to the nature of the disability and the particular job. You need to consider the **nature and severity** of the risk as well as the **likelihood or imminence** of the potential harm.

**Example**: a person with epilepsy who has lost consciousness from seizures within the past year may be excluded from a forklift position because the nature and severity of the harm from a seizure while driving a forklift would be grave and the likelihood of a seizure seems great. However, if the person's job is file clerk or secretary, you would not be able to exclude her from that position because the resulting harm of a seizure would be minimal.

On the other hand, if the employee's epilepsy is controlled with medication and he has not had a seizure in several years, you cannot exclude him from a forklift position because the likelihood of a seizure is minimal.

⊕ The risk must be current, not speculative. You may not exclude a person based on the speculation that his disability may become more severe, that a person will become unable to perform the job in the future or that the individual will have a future workers' compensation claim or excessive absenteeism.

**Example**: an employee who has had a back injury or carpal tunnel may not be excluded from a position solely on the premise that the position may worsen his condition over a period of years or that the employee might be a workers' compensation risk. Similarly, you cannot exclude an individual with a history of heart disease simply because you don't want to increase his risk of heart attack in the future

⊕ The assessment of risk must be based on objective medical or other factual evidence regarding the particular individual. This may include: input from the employee, the experience of the employee in previous jobs and documentation from doctors or other health care providers who have treated the employee or who have expertise in the type of disability involved

✗ *Do not make generalized assumptions about the limitations of certain types of disabilities; often our assumptions about certain conditions or diseases are wrong!*

⊕ Even if there is a significant risk of harm, you still must determine whether there is a reasonable accommodation that might reduce or eliminate the risk.

**Example**: a deaf employee who works as a warehouse picker might present a safety risk because he cannot hear the horns of the forklifts that are moving about the warehouse. However, if flashing lights are put on the forklifts, the flashing lights will alert the employee that a forklift is approaching. (This was an actual court case where the employer was held liable for failing to hire a deaf employee because of the above stated fear; the court held that flashing lights would have substantially reduced the perceived risk. However, the court also found that there was not a "high probability" of harm.)

NOTE: For a discussion on safety risks with respect to workers' compensation claimants, see the subsequent section entitled "Workers' Compensation.

## Medical Inquiries and Exams

*Applicants*. You may ask questions about a person's disability or limitations only **after making a conditional job offer**. If you suspect that a disabled applicant may pose a safety risk for the particular job or types of job for which she is applying, <u>you may not make a risk assessment until you have offered the applicant employment.</u>

If an applicant requests an accommodation during the interview and testing process and you are not sure if she is disabled, the ADA allows you to request written verification that the person is disabled and the interviewing/testing accommodation is needed. However, unless the requested accommodation is onerous, it is easier and safer to provide the interviewing/testing accommodation without requesting any verification.

_Current Employees_.  The ADA permits employers to make medical inquiries of employees only if there is a "business necessity" to do so.  The following are the most common circumstances in which medical information would be needed:

    ⊕  Making accommodation decisions.  If a person requests an accommodation or indicates that he is disabled, and you are not sure if the person is disabled or the accommodation is really needed, medical information may be needed to determine if you must make an accommodation.  Also, medical information may be needed to help you determine what might be an appropriate accommodation for a particular disability or condition where the appropriate accommodation is not otherwise obvious.

    NOTE:   **If a client is considering hiring a Spherion employee on a "permanent" basis, Spherion cannot send the employee for a physical exam. However, the client may ask the employee to take a physical exam but <u>only after it has made a conditional job offer to the employee</u>.**

    ⊕  Direct threat to health and safety.  Since the safety risk analysis requires that employers base risk assessments on objective evidence regarding the particular individual's abilities and limitations, medical inquiries are almost always necessary when excluding an individual from a specific job(s) because of safety concerns.  A form letter to doctors is included at the bottom of this page for this purpose.  (It must be tailored to each situation.)

**Remember:  the "direct threat" standard is <u>very difficult</u> to meet.  Thus, do not proceed to solicit medical information unless the risk seems substantial, imminent, and is not speculative or based on generalized assumptions or fears.  Please consult the Employment Law Department for legal advice before making any decisions to exclude an applicant or employee from employment or a specific job because of a safety risk.**

When seeking medical information from doctors or other health care providers, <u>you should always provide the doctor with a detailed description of the employee's job duties</u>.  Since risk assessments and accommodation decisions must be made with respect to specific jobs or duties, the doctor will not be able to provide accurate information unless he or she understands what the job entails.  Provide the doctor with as much specific information about the job as possible (e.g., will have to lift more than 25 lbs. for 75% of shift; will have to work standing for prolonged periods of time).

_**[This example concerns a person with epilepsy.  Perhaps the employee has told you he suffers from this condition or he has had a recent seizure at work.]**_

Dear Doctor:

            EMPLOYEE             was recently treated by _____ HOSPITAL    OR CLINIC      for a seizure suffered at work. He/she informed us that the treating physician believes the seizure may have been caused by a head injury he/she suffered in the past. As

his/her employer, we need additional information to help us make personnel decisions regarding his/her job assignment(s).

1. Has the employee suffered seizures in the past year, and if so, how frequently did they occur?  Does the employee have advance warning of the seizure(s) or do they occur suddenly and without notice?

2. Does the employee's medical condition preclude him/her from doing the duties on the attached list?  If so, identify the duties and the specific physical limitations supporting your decision.  Is the employee likely to recovers ufficiently to perform the described duties?  If so, what is the time frame?

3. Is there a medical reason to believe the employee is likely to experience another seizure by performing the described duties?  If so, what is the likelihood it will occur?  What is the time frame within which it is likely to occur?

4. Is there a medical reason to believe the employee is likely to be suddenly incapacitated?  If so, to what degree could the employee be incapacitated, and what is the likelihood this will occur?

5. If work restrictions are needed to prevent a risk of substantial harm to the employee or others, what should we consider in identifying ways to eliminate the need for the restrictions?

Thank you for your cooperation and assistance.

Sincerely,

_____

Spherion Manager

# EXHIBIT B

## SERVICES FOR DEAF AND HARD OF HEARING

Our staff wants to communicate effectively with you.  Please fill out this paper and return to a Spherion employee.

1.  Do you need a sign language interpreter in order to fill out an application?

    YES_____          NO_____

If you check "yes," we will arrange for a sign language interpreter, as soon as possible, at no cost to you, in order to assist during your interview and to help you understand the application.

2.  Do you need a sign language interpreter help us train you?

    YES_____          NO_____

If you check "yes" we will arrange for a sign language interpreter to be at your training class, at no cost to you.

3.  Will you need any other free services during training?

    YES_____NO_____ If you answered yes, please explain:

_____

_____

_____

_____

_____        _____  _____ a.m./p.m.
Signature                               Date       Time

Do you want a free copy of our reasonable accommodation policy?  YES _____

                                                                 NO _____

# EXHIBIT C

## NOTICE

The following notice is being posted at the Spherion office at 900 East Braker Lane in Austin, Texas pursuant to the terms of a Consent Decree reached between Spherion and the EEOC.

Management of Spherion Corporation wished to emphasize the company's fundamental policy of providing equal employment opportunity in all of its operations and in all areas of employment practices, and to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age, or disability. This policy extends to all terms, conditions and privileges of employment.

Pursuant to the Americans with Disabilities Act, it is unlawful for an employer to subject an employee or applicant for employment to discrimination based upon his or her disability. Further, it is unlawful for any employer to retaliate against an employee because he or she has opposed discriminatory employment practices, including disability discrimination, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Spherion Corporation respects the right of its employees and applicants for employment to work in an environment free from discrimination. Accordingly, Spherion Corporation reaffirms its commitment to complying with the strictures of the Americans with Disabilities Act, in that it is our policy to prohibit all discrimination in hiring, promotion, compensation, benefits, discharge or discipline because a qualified individual is disabled.

Any employee who believes that he/she has suffered discrimination on the basis of age, race, color, religion, sex, pregnancy, national origin, or disability, has the right to contact the EEOC directly at 1-800-669-4000 or TTY 1-800-669-6820. In compliance with federal law, no official at Spherion Corporation will retaliate against an employee who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart.